DUKE UNIVERSITY MEDICAL CENTER, MISSION-ST. JOSEPH'S HEALTH SYSTEM, INC., MOSES CONE HEALTH SYSTEM, THE NORTH CAROLINA BAPTIST HOSPITALS, INC., WAKE MEDICAL CENTER, Petitioner-Appellees v. H. DAVID BRUTON, M.D., SECRETARY OF THE NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES; THE NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF MEDICAL ASSISTANCE, Respondent-Appellants

No. COA98-940

(Filed 6 July 1999)

1. **Administrative Law— standard of review—DMA policy— construction of state and federal law**

Where petitioner hospitals alleged in their petition for judicial review that the Division of Medical Assistance erroneously construed state and federal law regarding the relation between Medicare and Medicaid in adopting a policy to deny Medicaid payments for hospital services to Medicaid recipients who are eligible but have failed to apply for Medicare, the standard for appellate review is de novo.

2. **Public Assistance— Medicaid—denial for failure to apply for Medicare—DMA policy—violation of federal law**

A policy of the Division of Medical Assistance which denies Medicaid payments for hospital services to Medicaid recipients who are eligible but have failed to apply for Medicare is not permitted by and is contrary to federal law since (1) no federal statute or regulation makes a Medicare application a condition of Medicaid eligibility; (2) no federal statute or regulation directs or authorizes a state agency to deny Medicaid coverage on the ground that the recipient is potentially eligible for Medicare; (3) Medicare is not "available" for these patients as third-party coverage; and (4) the buy-in agreement between the state and federal governments does not provide authority to deny Medicaid coverage on the ground that the recipient failed to enroll in Medicare.

3. **Administrative Law— Medicaid policy—unpromulgated legislative rule—unlawful procedure**

A policy of the Division of Medical Assistance which denies Medicaid payments for hospital services to Medicaid recipients who are eligible but have failed to apply for Medicare constitutes an unpromulgated legislative rule such that enforcement amounts

to an unlawful procedure under the N.C. Administrative Procedure Act.

Appeal by respondents from judgment entered 2 June 1998 by Judge Catherine C. Eagles in Guilford County Superior Court. Heard in the Court of Appeals 8 June 1998.

*Turner Enochs & Lloyd, P.A., by Thomas E. Cone, for petitioner-appellees.*

*Attorney General Michael F. Easley, by Assistant Attorney General Kathryn J. Thomas, for respondent-appellants.*

MARTIN, Judge.

Petitioners sought a declaratory ruling from the North Carolina Department of Human Resources, now the North Carolina Department of Health and Human Services (DHHS), regarding the validity of a policy of DHHS's Division of Medical Assistance (DMA), which denies Medicaid payments for hospital services rendered to recipients who were otherwise eligible but had failed to also file for Medicare. This policy was initiated in the June 1995 *Medical Bulletin* of the Claims Analysis Unit of DMA and was described as follows:

> Effective for claims processed on or after June 1, 1995, Medicaid will deny claims for recipients age 65 and over who are entitled to Medicare benefits but fail to apply. You may bill the recipient for Medicare-covered services if he fails to apply for Medicare benefits. Claims will be denied with [the entry of] . . . "Recipient is entitled to Medicare but failed to apply. Service is not covered. Bill recipient."

The policy was reviewed and upheld by DMA.

Petitioners sought judicial review of DMA's ruling in Guilford County Superior Court. Upon review of the declaratory ruling, the superior court found that the June 1995 *Medical Bulletin* effectively initiated a policy to "deny claims for recipients age 65 or over who are entitled to Medicare but failed to apply." The superior court also noted the existence of a "buy-in" agreement between the State and the Federal Department of Health and Human Services which "requires DMA to take certain actions to enroll potentially Medicare-eligible Medicaid recipients, but does not impose responsibility for this enrollment on Medicaid recipients."

After reviewing the "buy-in" agreement, relevant federal and state law, and the state Medicaid Plan, the superior court concluded that DMA's policy was unauthorized. Citing 42 C.F.R. § 435.608, the superior court concluded that DMA may not require Medicare enrollment as a condition of eligibility for the receipt of Medicaid, and that Medicare was not a condition of Medicaid coverage, except under the limited circumstances not applicable to this case. In addition, the superior court concluded that the DMA policy was not a properly promulgated rule within the meaning of the North Carolina Administrative Procedure Act (NCAPA), G.S. § 150B-18, and was therefore not binding on the public. Finally, the superior court concluded that federal statutes and regulations regarding third party coverage did not authorize DMA to deny claims on the grounds that Medicare provided third party coverage under these circumstances, and that DMA was required by federal law to pay for Medicaid services on behalf of such individuals without delay. The declaratory ruling was therefore reversed, and respondent agency now appeals.

## I. Standard of Review

[1] Appellate review of a judgment of the superior court entered upon review of an administrative agency decision requires that the appellate court determine whether the superior court utilized the appropriate scope of review and, if so, whether the superior court did so correctly. *Act-Up Triangle v. Com'n for Health Serv.*, 345 N.C. 699, 483 S.E.2d 388 (1997). The nature of the error asserted by the party seeking review dictates the appropriate manner of review: if the appellant contends the agency's decision was affected by a legal error, G.S. § 150B-51(1)(2)(3) & (4), *de novo* review is required; if the appellant contends the agency decision was not supported by the evidence, G.S. § 150B-51(5), or was arbitrary or capricious, G.S. § 150B-51(6), the whole record test is utilized. *In re Appeal by McCrary*, 112 N.C. App. 161, 435 S.E.2d 359 (1993). G.S. § 150B-4(a) permits review of an agency's declaratory ruling in the same manner as that of an order in a contested case. Therefore, the standard of review for the agency's declaratory ruling is determined by G.S. § 150B-51. "Under section 150B-51, a reviewing court is permitted to reverse or modify the agency's decision if the rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are affected by error of law." *D.G. Matthews & Son v. State ex rel. McDevitt*, 131 N.C. App. 3, 508 S.E.2d 331, 333 (1998), *disc. review denied*, 350 N.C. 92 (1999). Because appellees alleged in their petition for judicial review that appellants

erroneously construed state and federal law regarding the relation between Medicare and Medicaid, our standard of review is *de novo*. *See id.; Friends of Hatteras Island v. Coastal Resources Comm.*, 117 N.C. App. 556, 452 S.E.2d 337 (1995). In *de novo* review, an appellate court may substitute its judgment for that of the agency. *See id.*

## II.  Background

A summary of the Medicare and Medicaid acts is helpful in understanding DMA's policy and its operation with respect to the patients and health providers involved with this case.

### A.  Medicare

Title XVIII of the Social Security Act, entitled "Health Insurance for the Aged and Disabled," 42 U.S.C. §§ 1395-1395ccc, established the Medicare program, administered and funded by the federal government. Medicare provides health care benefits to the elderly and disabled: an individual must be at least 65 years old or disabled to be eligible. 42 U.S.C. § § 1395c and 426(a). These individuals are commonly referred to as Medicare-eligible patients.

Medicare coverage is primarily divided into two parts. Part A covers all inpatient hospital expenses through an insurance plan. *See* 42 U.S.C. §§ 1395c to 1395i-4. Enrollment is essentially automatic for Medicare-eligible patients receiving this benefit. Part B covers certain physician services, hospital outpatient services, and other health services not covered under part A. *See* 42 U.S.C. §§ 1395j to 1395w-4(j). Part B coverage is not freely or automatically available to all Medicare-eligible patients, who must first enroll in the part B insurance program by paying insurance premiums ("Part B insurance premiums"). See §§ 1395o -1395s. Once this is done, the federal government pays most of the "reasonable costs" of outpatient hospital services and most of the "reasonable charges" for physician services rendered to the insured. § 1395l. The part B patients themselves must pay the remaining charges for the outpatient hospital services and physician services (co-payments or coinsurance), as well as an annual deductible. *Id.*; § 1395cc(a)(2)(A). Together, the part B premiums, deductibles and coinsurance are generally referred to as "Part B cost-sharing." Reasonable costs and charges for the services covered under part B are established pursuant to the Medicare Act and its implementing regulations. See § 1395w-4(a), (b).

However, payment of Medicare cost-sharing would pose a problem for some poor Medicare-eligible patients. As explained below,

DUKE UNIV. MED. CTR. v. BRUTON

[134 N.C. App. 39 (1999)]

Congress resolved this problem by requiring payment of Medicare cost-sharing under state Medicaid plans.

### B. Medicaid

Congress established the Medicaid program as Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 et seq., in 1965 to provide "federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." *Harris v. McRae*, 448 U.S. 297, 301, 65 L.Ed.2d 784, 794 (1980). States participating in the optional program are entitled to federal financial participation (FFP) and are thereby reimbursed for a portion of their costs. See *Atkins v. Rivera*, 477 U.S. 154, 91 L.Ed.2d 131 (1986); *McKoy v. North Carolina Department of Human Resources*, 101 N.C. App. 356, 399 S.E.2d 382 (1991). "Although participation in the Medicaid program is entirely optional, once a State elects to participate, it must comply with the requirements of Title XIX," *Harris*, 448 U.S. at 301, 65 L.Ed.2d at 794, and the requirements of the Secretary of Health and Human Services. *Atkins*, 477 U.S. at 157, 91 L.Ed.2d at 137. Participating states must serve (1) the "categorically needy," defined as families with dependent children eligible for public assistance under the Aid to Families with Dependent Children ("AFDC") program, 42 U.S.C. § 601 *et seq.*, and (2) the aged, blind, and disabled persons eligible for benefits under the Supplemental Security Income ("SSI") program, 42 U.S.C. § 1381 *et seq.* See 42 U.S.C. § 1396a(a)(10)(A); *Harris*, 448 U.S. at 301 n. 1, 65 L.Ed.2d at 795 n. 1; *Elliot v. North Carolina Dept. of Human Resources*, 115 N.C. App. 613, 446 S.E.2d 809 (1994), *affirmed*, 341 N.C. 191, 459 S.E.2d 273 (1995).

### C. Interaction Between Medicare and Medicaid

Some individuals are eligible for benefits under both the Medicare and Medicaid Acts; they are either elderly or disabled, and they are poor. These individuals are commonly called "dual eligibles." 42 U.S.C. §§ 1395v & 1395i-2(g). While dual eligibles are, by definition, eligible for Medicare part A enrollment and part B insurance coverage, because they are impoverished there exists the risk that they will be unable to afford cost sharing requirements.

Medicare and Medicaid statutes have addressed this problem by creating a "buy-in" program, under which participating states with Medicaid plans use Medicaid funds (i.e., state funds for which federal matching funds under Medicaid are available) to pay for the cost-sharing requirements under Medicare. *Rehabilitation Assoc. of*

*Virginia, Inc., v. Kozlowski et al.*, 42 F.3d 1444, 1448 (4th Cir. 1994). For dual eligibles, "the state gets a real deal, because, given that Medicaid is treated as a payor of last resort, by enrolling dual eligibles for part B coverage, the primary financial payment for services received comes from the federal government for any services that are covered under both Medicare and Medicaid." *Id.* In other words, states use their Medicaid dollars, some of which are themselves federal in origin, to buy their dual eligibles into the federal program, thus shifting the primary payment for costs from the state Medicaid program to the federal Medicare program. *Id.*

Although the "buy in" agreements are considered voluntary, the state Medicaid program is required, under the statutory revisions of 1990, to pay the cost-sharing portions of Medicare as these expenditures fall within the definition of "medical assistance" in the Medicaid statute. 42 U.S.C. § 1396a(a)(10)(E)(i) and 42 U.S.C. § 1396d(p)(3) (Omnibus Budget Reconciliation Act of 1989).

Taken together, the Medicare and Medicaid schemes create a great incentive for states to enroll dual eligibles into Medicare using Medicaid state and federal matching funds. The statutes do not specifically address the situation in this case where the state wishes to deny Medicaid because the otherwise eligible recipient has failed to file for Medicare.

### III. The DMA Policy and its Operation

As described above, the policy at issue denies Medicaid payments to recipients who are potentially eligible for Medicare, but who have failed to apply. In their request for a declaratory ruling, petitioners submitted three hypothetical situations which illustrate the operation of the policy in the context of Medicare and Medicaid.

Patient A is a 67 year old Medicaid recipient under the M-AA program (medical assistance for those 65 and over) who simply failed to apply for Medicare, and therefore has never been found eligible for Medicare Benefits.

Patient B is a 71 year old hospital inpatient, eligible for medical assistance under the M-AA program. This patient applies for Medicare subsequent to his discharge from the hospital, but Medicare is denied for lack of proof of age. The denial is appealed, but no final determination is made.

DUKE UNIV. MED. CTR. v. BRUTON

[134 N.C. App. 39 (1999)]

Patient C is a 66 year old Medicaid recipient who has received medical assistance under Medicaid prior to admission to the hospital. After being admitted to the hospital, the patient applies for Medicare but is denied. She dies shortly after the Medicare denial, and so a current application for Medicare exists but has not been approved.

Under all of these circumstances the patients qualify for Medicaid benefits, but those benefits are denied pursuant to DMA's policy because the Medicaid recipients appear to be eligible for Medicare but have failed to properly enroll in Medicare.

It is also helpful to understand the position of the health care providers under these circumstances. Providers cannot deny services to Medicaid beneficiaries under these circumstances, even though the state agency will deny Medicaid payment. Services may not be denied for Medicaid beneficiaries on the basis of potential third party liability; federal law requires the state Medicaid plan to provide:

> that a person who furnishes services and is participating under the plan may not refuse to furnish services to an individual (who is entitled to have payment made under the plan for the services the person furnishes) because of a third party's potential liability for payment for the service.

42 U.S.C. § 1396a(25)(D). Therefore, the providers must accept the Medicaid eligible patient who is also potentially eligible for Medicare, knowing that the state agency will deny Medicaid payments because of potential eligibility. In addition, the health care providers are prohibited by state regulation from billing the Medicaid patient directly, under these circumstances because the patient is not enrolled in Medicare.

> (c) Providers may bill a patient accepted as a Medicaid patient only in the following situations:
>
> . . .
>
> (3) the patient is 65 years of age or older and is enrolled in the Medicare program at the time services are received but has failed to supply a Medicare number as proof of coverage.

10 N.C.A.C. 26K.0006(c)(3). In effect, the provider is stuck with the costs because the state agency failed to make Medicaid payments to Medicaid eligible patients and the otherwise eligible patient failed to file for Medicare. The underlying issue is whether the state or the health care provider should bear the burden of a Medicaid recipient's

failure to take advantage of federal Medicare assistance. We conclude that federal law requires the state to bear this burden. A review of the pertinent statutes and regulations reveals that the DMA policy is contrary to federal law. In addition, we conclude that this policy constitutes an unpromulgated legislative rule such that enforcement amounts to an "unlawful procedure" under the NCAPA.

## IV. Federal Law

### A. Medicare as a Condition of Eligibility

[2] As noted above, any state receiving federal funds under the Medicaid program must make medical assistance available to classes of individuals who meet the eligibility requirements. 42 U.S.C. § 1396a(a)(10)(A). A state is required to "[f]urnish Medicaid promptly to recipients without any delay . . ." and "[c]ontinue to furnish Medicaid regularly to all eligible individuals until they are found to be ineligible . . . ." 42 C.F.R. § 435.930(a) & (b).

The parties agree that the classes of patients at issue in this case (A,B,C above) meet the Medicaid eligibility requirements. In addition, the definition of "medical assistance" under the Medicaid statute includes hospital inpatient and outpatient services. 42 U.S.C. § 1396d(a)(xi)(1) & (2). Under these circumstances, the Medicare application requirement as a condition of receiving Medicaid payments is not supported by federal law.

Medicare is not a condition of eligibility for Medicaid under federal law:

> As a condition of eligibility, the agency must require applicants and recipients to take all necessary steps to obtain any annuities, pensions, retirement, and disability benefits to which they are entitled, unless they can show good cause for not doing so.

42 C.F.R. § 435.608. Medicare is neither an annuity, pension, retirement, or disability benefit. No federal statute or regulation makes Medicare application a condition of Medicaid eligibility. As discussed below, respondents admit that Medicare is not a condition of Medicaid eligibility, but maintain that federal and state law supports the DMA policy of denying payments under these circumstances.

### B. Medicare as a Condition of Coverage

Respondents argue that 42 U.S.C. § 1396b(b)(1) makes Medicare a condition of Medicaid coverage. This federal statute describes one

situation where federal matching Medicaid payments for services under Medicare part A are restricted because the services would have been covered by Medicare part B, and the recipient has simply failed to enroll in part B. This section withholds federal matching Medicaid funds:

> with respect to individuals aged 65 or over and disabled individuals entitled to hospital insurance benefits under subchapter XVIII of this chapter [Medicare Part A] which would not have been so expended if the individuals involved had been enrolled in the insurance program established by part B of subchapter XVIII of this chapter, . . . .

42 U.S.C. § 1396b(b)(1). The statute operates to deny federal matching Medicaid payments for those services rendered to a patient who has enrolled in Medicare part A but has failed to enroll in part B, *and* part B would have paid for those services. 42 U.S.C. § 1396b(b)(1) has been further interpreted by federal regulation:

> No FFP [Federal Financial Participation] is available in State Medicaid expenditures that could have been paid for under Medicare part B but were not because the person was not enrolled in part B. This limit applies to all recipients eligible for enrollment under part B, whether individually or through an agreement [buy-in] . . . .

42 C.F.R. § 431.625(d) ("Federal financial participation: Medicare Part B premiums"). Respondents argue that this statute provides the state agency a basis to deny state Medicaid payments when otherwise eligible recipients have failed to previously enroll in Medicare. We disagree.

42 U.S.C. § 1396b(b)(1) as interpreted by 42 C.F.R. § 431.625(d) applies to *federal* payment of matching funds, not to *state* Medicaid payments to otherwise eligible recipients. Far from providing state agencies a ground to *deny* Medicaid payments, this statute was intended to effectively *require* states to enroll dual eligibles in Medicare part B in order to receive matching funds for part A. S. Rep. No. 744, *reprinted in* 1967 U.S.C.C.A.N. 2869, 3135 ("The bill would provide that Federal matching amounts would not be available to States toward the cost of services which could have been covered under the supplementary medical insurance programs but were not."); *See Briggs v. Commonwealth*, 707 N.E.2d 355, 359, n. 13 (Mass. 1999) (describing how 42 U.S.C. § 1396b(b)(1) "effectively

made the program for 'dual eligibles' mandatory by denying Federal matching Medicaid funds to States for costs that could have been avoided if the individual had been enrolled in Medicare part B coverage.").

In addition, § 1396b(b)(1) does not apply to this case because that statute restricts federal participation only when services are covered by Medicare *part B*. Petitioners in this case seek payment for inpatient hospital services generally covered by Medicare *part A*. Medicare part A generally covers all inpatient hospital expenses, *see* 42 U.S.C. §§ 1395c to 1395i-4; while, part B generally covers certain physician services, hospital outpatient services, and other health services not covered under part A. *See* 42 U.S.C. §§ 1395j to 1395w-4(j). Because § 1396b(b)(1) restricts Medicaid payments for services covered under part B, and the patients in this case seek payment for hospital inpatient services covered by part A, § 1396b(b)(1) does not apply to payments for services provided to the patients in this case.

Finally, no other statute or regulation specifically directs or authorizes the state agency to deny Medicaid coverage on the grounds that the recipient is potentially eligible for Medicare.

### C.  Medicare as Third Party Coverage

Respondents also argue that the DMA policy is authorized under federal law because Medicare exists for these patients as third party coverage, and the state agency can therefore deny Medicaid payments where there are third parties liable for the payments. We disagree with respondents' claim that Medicare is "available" for the purposes of third party liability, when the Medicaid recipients have not applied for Medicare.

"Medicaid is intended to be the payer of last resort, that is, other available resources must be used before Medicaid pays for the care of an individual enrolled in the Medicaid program." S.Rep. No. 146, *reprinted in* 1986 U.S.C.C.A.N. 42, 279. Thus, the Medicaid statute mandates that states require applicants and recipients to "assign the State any rights . . . to support . . . for the purpose of medical care . . . and to payment for medical care from any third party." 42 U.S.C. § 1396k(a)(1)(A). The state agency is also required to:

> take all reasonable measures to ascertain the legal liability of third parties (including health insurers, group health plans . . . , service benefit plans, and health maintenance organi-

zations) to pay for care and services available under the plan, including—

(i) the collection of sufficient information (as specified by the Secretary in regulations) to enable the State to pursue claims against such third parties, with such information being collected at the time of any determination or redetermination of eligibility for medical assistance, and

(ii) the submission to the Secretary of a plan (subject to approval by the Secretary) for pursuing claims against such third parties, which plan shall be integrated with, and be monitored as a part of the Secretary's review of, the State's mechanized claims processing and information retrieval systems required under section 1396b(r) of this title

42 U.S.C. § 1396a(25)(A); 42 C.F.R. § 433.138. A third party is broadly defined as "any individual, entity or program that is or may be liable to pay all or part of the expenditures for medical assistance furnished under a State plan." 42 C.F.R. § 433.136.

In the present case, Medicare is an "insurance program," under 42 U.S.C. § 1395c, and may be available as third party coverage in the context of Medicaid. *NYSDSS v. Bowen*, 846 F.2d 129, 133 (2d Cir. 1988) ("It cannot be disputed, as the district court conceded, that Medicare is a 'third party' for purposes of the third party liability provision."). However, Medicare coverage does not accrue or vest until an application has been successfully approved. 42 U.S.C. § 426(a)(2)(A). Until a person has at least filed for Medicare, it cannot be said that Medicare is a "program that is or may be liable" as a third party. 42 C.F.R. § 433.136.

Our conclusion is supported by the federal regulation which specifies the procedure states must follow in evaluating third party claims. 42 C.F.R. § 433.139(c) requires that state agencies pay the full Medicaid benefits when "[p]robable [third party] liability is not established or benefits are not available at the time the claim is filed."

If the probable existence of third party liability cannot be established or third party benefits are not available to pay the recipient's medical expenses at the time the claim is filed, the agency must pay the full amount allowed under the agency's payment schedule.

42 C.F.R. § 433.139(c). In the present case, the DMA policy requires that the agency discover whether Medicare coverage *does not exist.* Upon finding no existing Medicare coverage, the federal regulation requires the agency to "pay the full amount." However, DMA's policy denies Medicaid payments *because* Medicare liability is not established. The DMA policy therefore directly contradicts this federal regulation.

Nevertheless, respondents maintain that the probable existence of third party liability can be determined simply by ascertaining the age of the Medicaid recipient. Respondents argue that because the Medicaid recipient is 65 or over and is enrolled in Medicaid, the recipient need only apply for Medicare and enrollment (the payment of premiums) is automatic. Following this reasoning, respondents conclude that Medicare is probably liable as a third party. However, respondents' argument fails to account for another provision of the same regulation which states:

(b)  Probable liability is established at the time claim is filed.

. . .

(1)  If the agency has established the probable existence of third party liability at the time the claim is filed, the agency must reject the claim and return it to the provider for a determination of the amount of liability. *The establishment of third party liability takes place when the agency receives confirmation from the provider or a third party resource indicating the extent of third party liability.* When the amount of liability is determined, the agency must then pay the claim to the extent that payment allowed under the agency's payment schedule exceeds the amount of the third party's payment (emphasis added).

42 C.F.R. § 433.139(b)(1). Under this provision, the agency must establish the existence of third party liability with confirmation "indicating the amount of third party liability." Here, even assuming that DMA correctly has determined the probable existence of third party liability by inferring such potential liability from the age of the recipient, DMA cannot confirm the actual existence or amount of Medicare liability, as required by the regulation, because no such actual current Medicare liability exists. We conclude that DMA's policy is contrary to federal law. Under the federal statutes and regulations, the mere existence of possible Medicare eligibility does not create third party Medicare liability.

**DUKE UNIV. MED. CTR. v. BRUTON**

[134 N.C. App. 39 (1999)]

## D. State and Federal Buy-In Agreement

There is some confusion in this dispute as to the role of the "buy-in" agreement between the state and federal governments. The superior court found that the buy-in agreement required the state agency "to take certain actions to enroll potentially Medicare-eligible Medicaid recipients," but the buy-in agreement "does not impose responsibility for this enrollment on Medicaid recipients." As discussed above, the buy-in agreement provides a mechanism for the state to enroll Medicaid recipients into Medicare. The question of the respective obligations of the state and recipients under the buy-in agreement is not before us. For the purposes of this appeal, it is sufficient to note that the buy-in agreement does not provide DMA authority to deny Medicaid coverage on the grounds that the recipient has failed to enroll in Medicare.

We conclude that DMA's policy of denying Medicaid coverage for hospital inpatient services because recipients have not applied for Medicare is contrary to federal law.

## V. Administrative Procedure

[3] In addition, DMA's policy is also unauthorized because it involves the application of an unpromulgated legislative rule. An administrative agency may not act outside the mandates of the NCAPA, G.S. §§ 150B et seq.; specifically, "a rule is not valid unless it is adopted in substantial compliance with this Article." N.C. Gen. Stat. § 150B-18 (1995). For the following reasons we conclude that DMA's policy is a legislative rule, and application of that policy constitutes an unlawful procedure under the NCAPA; thus, we affirm the superior court's ruling that the agency acted without authority in implementing that policy without complying with the rule making requirements of the NCAPA.

G.S. § 150B-2(8a) defines "rule" as

any agency regulation, standard, or statement of general applicability that implements or interprets an enactment of the General Assembly or Congress or a regulation adopted by federal agency or that describes the procedure or practice requirements of an agency . . . . The term does not include the following:

. . .

**DUKE UNIV. MED. CTR. v. BRUTON**

[134 N.C. App. 39 (1999)]

> c. Nonbinding interpretive statements within the delegated authority of an agency that merely define, interpret, or explain the meaning of a statute or rule.

The policy denying Medicaid payments to those who are eligible for Medicare, but have failed to enroll, is an administrative "rule" within the foregoing definition; the requirement creates a binding standard which interprets the eligibility and coverage provisions of the Medicaid law and, in addition, denies a substantial right. *Comr. of Insurance v. Rate Bureau*, 300 N.C. 381, 411, 269 S.E.2d 547, 568, *reh'g denied*, 301 N.C. 107, 273 S.E.2d 300 (1980) (Rules operate to " 'fill the interstices of the statutes,' ", and " 'go beyond mere interpretation of statutory language or application of such language and within statutory limits set down additional substantive requirements.' "); *Beneficial North Carolina, Inc. v. State ex rel. North Carolina State Banking Com'n*, 126 N.C. App. 117, 484 S.E.2d 808 (1997).

Respondent agency argues, however, that its interpretation of the several state and federal laws implicated by this question tend to uphold its policy. We disagree and accordingly hold that there is neither statutory nor regulatory authority for DMA's policy denying Medicaid under these circumstances. The DMA policy of denying Medicaid payments to otherwise eligible recipients on the grounds that they have failed to enroll in Medicare is an application of unpromulgated legislative rule and amounts to an unlawful procedure, requiring that we affirm the judgment of the superior court. *See Dillingham v. N.C. Dep't of Human Res*, 132 N.C. App. 704, 513 S.E.2d 823 (1999); *Surgeon v. Division of Social Services*, 86 N.C. App. 252, 357 S.E.2d 388, *disc. review denied*, 320 N.C. 797, 361 S.E.2d 88 (1987).

Affirmed.

Judges GREENE and WYNN concur.