R.J. REYNOLDS TOBACCO COMPANY, Petitioner v. NORTH CAROLINA DEPART-
MENT OF ENVIRONMENT & NATURAL RESOURCES, Respondent

No. COA01-74

(Filed 19 February 2002)

**1. Taxation— recycling credit—tobacco stems, scrap, and dust**

Recovered tobacco stems, scrap and dust used in cigarette manufacturing are "solid waste" within the meaning of the statutes providing tax benefits for equipment used in resource recovery or recycling. The stems, scrap, and dust used in this process would otherwise be discarded. N.C.G.S. §§ 130A-290(35), 105-275(8)(b).

R.J. REYNOLDS TOBACCO CO. v. N.C. DEP'T OF ENV'T & NATURAL RES.

[148 N.C. App. 610 (2002)]

## 2. Administrative Law— superior court review—agency findings omitted

The trial court did not err by omitting all or part of respondent-agency's findings regarding a tax certification for re-using discarded tobacco stems, scrap, and dust where one finding involved the storage of the discarded tobacco materials, but there is no requirement that materials to be recycled be discarded; other findings merely showed that petitioner successfully incorporated its recycling process into its manufacturing program; and previous certifications were not relevant to the denial of this application.

## 3. Administrative Law— denial of recycling tax certification—arbitrary and capricious

Respondent-agency's denial of an application for a recycling tax certification without an inspection of the facility evinced a lack of fair and careful consideration under the circumstances and was arbitrary and capricious.

Appeal by respondent from order entered 20 September 2000 by Judge W. Douglas Albright in Forsyth County Superior Court. Heard in the Court of Appeals 26 November 2001.

*Kilpatrick Stockton LLP, by Alan H. McConnell and Theodore C. Edwards, II, for petitioner-appellee.*

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Nancy E. Scott, for respondent-appellant.*

MARTIN, Judge.

On 16 April 1998, petitioner, R.J. Reynolds Tobacco Company ("Reynolds") applied to respondent, North Carolina Department of Environment and Natural Resources ("DENR") for tax certification of certain newly installed equipment as solid waste recycling or resource recovery equipment, pursuant to G.S. §§ 105-275(8)(b), 105-122(b), 105-130.5, and 105-130.10. By letter dated 4 September 1998, DENR denied Reynolds' tax certification application, based upon its assertion that the materials processed by the equipment were not waste materials. Reynolds petitioned for a contested case hearing pursuant to G.S. § 150B-23.

The Tax Certification Program, codified at G.S. §§ 105-275(8)(b), 105-122(b), 130A-290(35), 105-130.5, and 105-130.10 provides tax

R.J. REYNOLDS TOBACCO CO. v. N.C. DEP'T OF ENV'T & NATURAL RES.

[148 N.C. App. 610 (2002)]

benefits for capital investments in facilities and equipment used exclusively for resource recovery or recycling of or from solid waste. These tax benefits include the exclusion of real and personal property from the local city and county ad valorem tax base, deduction of the value of the facilities and equipment from the value of property upon which the corporate franchise tax is levied, and rapid amortization of the construction, purchase and installation cost of the facilities, resulting in increased deductions from corporate taxable income. DENR must certify a facility's eligibility for participation before a facility receives any tax benefits for its recycling program.

Reynolds first submitted a request to DENR for tax certification for a resource recovery facility and equipment in Building 603 at its Whitaker Park manufacturing facility in 1982. DENR issued Reynolds a tax certification covering the building, land, and equipment listed in the application. From 1986 until 1995, Reynolds applied for and received eight additional tax certifications from DENR for new equipment purchased and installed in Building 603 at Whitaker Park. DENR conducted an inspection before granting certification upon each of these applications. DENR issued its 4 September 1998 letter denying Reynolds' April 1998 application, the first time it had denied an application for tax certification for Building 603, without conducting any inspection.

In manufacturing tobacco products, Reynolds buys tobacco leaves at auction. The tobacco is sent to a stemmery, where the stems (hard, woody part of the leaf) are separated from the lamina portion of the leaf (material in between the stems). The separation process also generates small scraps of tobacco (scraps) and very fine scraps of tobacco (dust). The usable tobacco lamina material is sent to the manufacturing operation where it is blended and processed into cigarettes. The stems, scraps and dust are packed into containers and sent to a storage facility until they are either processed into reconstituted sheet tobacco, through a process known as the G-7 process, or are discarded. The reconstituted sheet tobacco is shredded and blended with the processed lamina strips and made into filler for cigarettes. The reconstituted tobacco filler is part of most brands of cigarettes made by Reynolds, and enables cigarettes to be made with lower tar and nicotine content which has been demanded by smoking consumers.

Reynolds uses approximately seventy million pounds of tobacco stems, scrap and dust each year in making reconstituted sheet

R.J. REYNOLDS TOBACCO CO. v. N.C. DEP'T OF ENV'T & NATURAL RES.

[148 N.C. App. 610 (2002)]

tobacco. Reynolds also disposes of between five and seven million pounds of tobacco waste materials in landfills each year. This material is of a lower quality than the stems, scrap and dust used in the G-7 process; much of it is generated by the manufacturing process, rather than the stemmery, though some tobacco waste generated by the stemmery is also disposed of.

In order to keep up with its production requirements for reconstituted tobacco, Reynolds imports tobacco stems purchased overseas. Reynolds sells reconstituted tobacco to other manufacturers of tobacco products, and manufactures reconstituted sheet tobacco for other tobacco manufacturers, using stems, scraps and dust supplied by them. One of Reynolds' witnesses testified that even if there were no tax incentives for recycling and resource recovery of or from solid waste, Reynolds would still operate the G-7 process because of its cost-effectiveness.

An administrative law judge issued a recommended decision upholding DENR's denial of Reynolds' 1998 application for tax certification. DENR subsequently issued its final agency decision, in which it adopted the recommended decision of the administrative law judge and denied certification. Reynolds filed a timely petition for judicial review of the final agency decision pursuant to G.S. § 150B-43 *et seq.* The Forsyth County superior court reversed the final agency decision and ordered DENR to approve Reynolds' application for tax certification. The superior court concluded that the tobacco scrap, stems and dust used to make reconstituted sheet tobacco are "solid waste" within the meaning of G.S. § 130A-290(35) and therefore Reynolds' resource recovery and recycling equipment qualified for inclusion in the North Carolina Tax Certification Program. The court also concluded that DENR's final agency decision was not supported by substantial evidence, was in excess of its statutory authority because DENR had failed to inspect the Reynolds facility after receiving a complete application for tax certification as required by 15A NCAC 13B.1508(d), and was arbitrary and capricious. DENR appeals.

Judicial review of administrative agency decisions is governed by the North Carolina Administrative Procedure Act (APA), codified at Chapter 150B of the General Statutes. *Henderson v. N.C. Dept. of Human Resources*, 91 N.C. App. 527, 372 S.E.2d 887 (1988). The superior court is authorized to reverse or modify an agency's final decision under G.S. § 150B-51(b)

R.J. REYNOLDS TOBACCO CO. v. N.C. DEP'T OF ENV'T & NATURAL RES.

[148 N.C. App. 610 (2002)]

if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary or capricious.

The proper standard of review by the superior court is determined by the particular issues presented on appeal. *In re Appeal by McCrary*, 112 N.C. App. 161, 435 S.E.2d 359 (1993). When the petitioner contends the agency decision was affected by an error of law, G.S. § 150B-51(b)(1)(2)(3) & (4), *de novo* review is the proper standard; if it is contended the agency decision was not supported by the evidence, G.S. § 150B-51(b)(5), or was arbitrary and capricious, G.S. § 150B-51(b)(6), the whole record test is the proper standard. *Dillingham v. N.C. Dept. of Human Resources*, 132 N.C. App. 704, 513 S.E.2d 823 (1999). The reviewing court may be required to utilize both standards of review if warranted by the nature of the issues raised. *McCrary*, 112 N.C. App. 161, 435 S.E.2d 359.

In seeking judicial review of DENR's decision in this case, Reynolds alleged that the decision was based on an error of law, that the decision was not supported by the evidence, and that the decision was arbitrary and capricious. Therefore, the superior court was required to employ both a *de novo* review for errors of law, and a whole record review to determine whether DENR's decision was supported by substantial evidence and whether it was arbitrary and capricious. Our review of the superior court's decision requires that we review the order for error of law to determine whether that court employed the appropriate standard of review and whether it did so correctly. *ACT-UP Triangle v. Comm'n for Health Services*, 345 N.C. 699, 483 S.E.2d 388 (1997).

**R.J. REYNOLDS TOBACCO CO. v. N.C. DEP'T OF ENV'T & NATURAL RES.**

[148 N.C. App. 610 (2002)]

## I.

**[1]** In those cases where the superior court is required to employ a *de novo* standard of review of the agency's decision, appellate review of the superior court's order requires that this Court also review the agency's decision *de novo. McCrary, supra. De novo* review requires the court to " 'consider a question anew, as if not considered or decided by the agency' previously . . . ." and to "make its own findings of fact and conclusions of law . . ." rather than relying upon those made by the agency. *Jordan v. Civil Serv. Bd. of Charlotte,* 137 N.C. App. 575, 577, 528 S.E.2d 927, 929 (2000) (citation omitted).

The Tax Certification Program provides an exemption from taxation for

> *[r]eal or personal property that is used or, if under construction, is to be used exclusively for recycling or resource recovering of or from solid waste,* if the Department of Environment and Natural Resources furnishes a certificate to the tax supervisor of the county in which the property is situated stating the Department of Environment and Natural Resources has found that the described property has been or will be constructed or installed, complies or will comply with the rules of the Department of Environment and Natural Resources, and has, *or will have as its primary purpose recycling or resource recovering of or from solid waste.*

N.C. Gen. Stat. § 105-275(8)(b) (emphasis added). Thus, whether the tobacco stems, scraps and dust used in Reynolds' G-7 process is "solid waste" is critical to a determination of this matter.

G.S. § 130A-290(35) provides in pertinent part:

> "Solid waste" means any hazardous or nonhazardous garbage, refuse or sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility, domestic sewage and sludges generated by the treatment thereof in sanitary sewage collection, treatment and disposal systems, *and other material that is either discarded or is being accumulated, stored or treated prior to being discarded,* or has served its original intended use and is generally discarded, including solid, liquid, semisolid or contained gaseous material resulting from industrial, institutional, commercial and agricultural operations, and from community activities . . . (emphasis added).

R.J. REYNOLDS TOBACCO CO. v. N.C. DEP'T OF ENV'T & NATURAL RES.

[148 N.C. App. 610 (2002)]

Whether the tobacco stems, scrap and dust used by Reynolds in its G-7 process to make reconstituted sheet tobacco comes within the statutory definition, then, is a question of law. *McCrary, supra.* (Incorrect statutory interpretation constitutes an error of law). In reviewing DENR's denial of Reynolds' 1998 application for tax certification, the superior court found the evidence in the official record with respect to Reynolds' use of the G-7 process to make reconstituted sheet tobacco from stems, scrap and tobacco dust supported a conclusion that such materials are "solid waste" within the meaning of G.S. § 130A-290(35). The superior court concluded that DENR's conclusion to the contrary in its Final Agency Decision was an error of law. In so doing, the superior court correctly utilized the *de novo* standard of review. In order for this Court to properly conduct its review of the superior court order, we must also review *de novo* DENR's conclusion that "[t]obacco scrap, tobacco stems, and tobacco dust used in the G-7 process are not 'solid waste' within the meaning of N.C. Gen. Stat. § 130A-290(35)." *McCrary, supra.*

"Statutory interpretation properly begins with an examination of the plain words of the statute." *Correll v. Division of Social Servs.,* 332 N.C. 141, 144, 418 S.E.2d 232, 235 (1992). "If the language of the statute is clear and is not ambiguous, we must conclude that the legislature intended the statute to be implemented according to the plain meaning of its terms." *Hyler v. GTE Prods. Co.,* 333 N.C. 258, 262, 425 S.E.2d 698, 701 (1993). "[A] statute must be considered as a whole and construed, if possible, so that none of its provisions shall be rendered useless or redundant." *Builders, Inc. v. City of Winston-Salem,* 302 N.C. 550, 556, 276 S.E.2d 443, 447 (1981). "It is presumed that the legislature intended each portion to be given full effect and did not intend any provision to be mere surplusage." *Id.* (citations omitted). Though we have held that "tax exemption statutes must be strictly construed against exemption . . .," we have observed "that such statutes should not be given a narrow or stingy construction." *In re Wake Forest University,* 51 N.C. App. 516, 521, 277 S.E.2d 91, 94, *disc. review denied,* 303 N.C. 544, 281 S.E.2d 391 (1981) (citations omitted).

Applying these tenets to the statutory definition of "solid waste," we conclude that the tobacco scrap, stems and dust used in Reynolds' G-7 process fall within it. The statutory definition includes "material that is either discarded or is being accumulated, stored or treated prior to being discarded . . . ." The language of the statute is clear and we must interpret the statute according to the plain meaning of its

R.J. REYNOLDS TOBACCO CO. v. N.C. DEP'T OF ENV'T & NATURAL RES.

[148 N.C. App. 610 (2002)]

terms. The record evidence before DENR is undisputed that the tobacco stems, scrap and dust are waste materials generated in the stemmery, that Reynolds accumulates and stores such materials after the tobacco lamina leaves the stemmery, and that such materials remain in storage until they are either used in the G-7 process or discarded. Were it not for the G-7 process, all of the stems, scrap and dust generated by the stemmery process would be discarded. Thus, we hold that the tobacco stems, scrap and dust utilized in Reynolds' G-7 process are "solid waste" within the meaning of G.S. § 130A-290(35).

In so holding, we reject DENR's argument that our decision should be guided by federal case law interpreting the definition of "solid waste" as used in the federal Resource Conservation and Recovery Act (RCRA), 42 USC § 6901 *et seq.* North Carolina's statute contains broader language than the federal statute in defining "solid waste," expanding the phrase "*other discarded material*" contained in the federal definition, 42 USC § 6903(27), to include "and other material that is either discarded or is being accumulated, stored or treated prior to being discarded, or has served its original intended use and is generally discarded." N.C. Gen. Stat. § 130A-290(35). Because the state definition is broader than the federal definition, we will not rely on federal case law in our interpretation.

## II.

[2] In reviewing Reynolds' contentions that DENR's final decision was not supported by substantial evidence and was arbitrary and capricious, the superior court was required to conduct a whole record review. In its order, the superior court asserted that it had "reviewed the entire record in this matter and applied the 'whole record' test . . . ."

"The 'whole record' test requires the reviewing court to examine all competent evidence (the 'whole record') in order to determine whether the agency decision is supported by 'substantial evidence.' " *Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 674, 443 S.E.2d 114, 118 (1994). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Comr. of Ins. v. Rating Bureau*, 292 N.C. 70, 80, 231 S.E.2d 882, 888 (1977). In applying the whole record test, the reviewing court must "take into account both the evidence justifying the agency's decision and the contradictory evidence from which a different result could be reached." *Lackey v. Dept. of Human*

R.J. REYNOLDS TOBACCO CO. v. N.C. DEP'T OF ENV'T & NATURAL RES.

[148 N.C. App. 610 (2002)]

*Resources*, 306 N.C. 231, 238, 293 S.E.2d 171, 176 (1982). Under this test, the reviewing court is not allowed to replace the agency's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different conclusion had the matter been before it *de novo. Meads v. N.C. Dept. of Agric.*, 349 N.C. 656, 509 S.E.2d 165 (1998). Additionally, a decision by an administrative agency "is arbitrary and capricious if it clearly evinces a lack of fair and careful consideration or want of impartial, reasoned decisionmaking." *Joyce v. Winston-Salem State Univ.*, 91 N.C. App. 153, 156, 370 S.E.2d 866, 868, *cert. denied*, 323 N.C. 476, 373 S.E.2d 862 (1988).

DENR contends that there was substantial evidence to support its denial of Reynolds' application for tax certification and that the superior court misapplied the whole record test by impermissibly substituting its judgment for that of the agency by omitting all or part of many of DENR's findings of fact, by adding new findings of fact, and by basing its conclusions of law on the court's findings rather than the agency's findings. We reject DENR's contentions.

DENR specifically argues that the trial court erred in omitting DENR's findings that Reynolds has not discarded the tobacco stems, scrap and dust used to make reconstituted sheet tobacco but instead has aged and stored these materials before reconstituting them into sheet tobacco. However, whether Reynolds has discarded the materials is irrelevant to the inquiry of whether the tobacco stems, scrap and dust are "solid waste;" the definition of "solid waste," as discussed earlier, includes ". . . material that is either discarded *or is being accumulated, stored or treated prior to being discarded . . . .*" N.C. Gen. Stat. 130A-290(35) (emphasis added). Therefore, there is no requirement that the materials actually be discarded. DENR's argument, carried to its logical conclusion, would mean that taxpayers who successfully recycle waste materials would no longer qualify for tax certification because they no longer discard the waste materials. Such a proposition would be absurd and clearly contrary to the legislative intent to encourage the recovery and recycling of solid waste.

For similar reasons, we reject DENR's arguments that the superior court erred in omitting DENR's findings: (1) that reconstituted sheet tobacco is integral and necessary to almost all of Reynolds' brands of cigarettes, where it has been a major tool for designing cigarettes with lower tar and nicotine content, as demanded by the

smoking public; (2) that Reynolds buys tobacco stems overseas to keep up with its production requirements for reconstituted tobacco; (3) that Reynolds finds it is economical to utilize as much of the tobacco leaf as possible in its products; (4) that tax incentives were not determinative of whether Reynolds operated the G-7 process and that Reynolds would continue to operate the G-7 process without the tax certification program; and (5) that reconstitution of tobacco stems, scrap, and dust is widespread throughout the tobacco industry. These findings merely show that Reynolds has successfully incorporated its recycling process into its manufacturing program; such findings have no bearing on whether the materials should be considered "solid waste." Therefore, it was unnecessary for the superior court to have included these findings in its order.

DENR further contends the superior court erred in omitting its findings of fact with respect to its previous certifications of Reynolds' G-7 facility and equipment, and DENR's explanation for denying the 1998 application when it had approved nine similar applications, beginning in 1982. None of these findings were relevant, however, to a determination of whether there was substantial evidence supporting the agency's denial of Reynolds' 1998 application for tax certification.

DENR additionally contends the superior court erred by finding the following facts in its order:

18. Without the G-7 process, the tobacco scrap, stems and dust could not be used to make cigarettes.

19. Without the G-7 process, most of Reynolds' tobacco scrap, stems, and dust would be discarded in landfills.

Such facts, however, were made in regard to the superior court's determination that the materials were "solid waste," a matter of law to be decided under *de novo* review, as previously discussed.

For the foregoing reasons, we conclude that the superior court did not impermissibly apply its judgment for that of the agency in conducting the whole record review in this case. After carefully reviewing the whole record before the agency in this matter, we agree with the trial court that there was not substantial evidence to support the agency's decision that the materials utilized in Reynolds' G-7 process were not "solid waste" and denying tax certification to the land and equipment associated with that process.

R.J. REYNOLDS TOBACCO CO. v. N.C. DEP'T OF ENV'T & NATURAL RES.

[148 N.C. App. 610 (2002)]

**[3]** The superior court also concluded that DENR's failure to inspect the Building 603, Whitaker Park facility, as required by 15A NCAC 13B.1508(d), prior to its decision to deny the application was "indicative of a lack of fair and careful consideration by DENR" and that its denial of Reynolds' 1998 application was arbitrary and capricious. 15A NCAC 13B.1500 *et seq.* sets forth standards for the special tax treatment given resource recovery equipment and facilities. Applications for tax certification are governed by rule .1508 which provides, in pertinent part, that upon "proper receipt" of the information required by the rule "a representative of the Division of Solid Waste Management shall inspect said facilities and equipment." 15A NCAC 13B.1508(d).

DENR argues that if the application discloses on its face that the facility is not eligible for certification, no inspection is required, as there has been no "proper receipt" of an application. We need not decide, in this case, what constitutes a "proper receipt" or when inspection is required; the record shows that DENR had inspected this same facility on nine previous occasions, had approved certification for the facility after each of those inspections, and denied certification of the 1998 application after erroneously characterizing the materials utilized in the process as "home scrap," an error which would have been apparent upon inspection. Under these circumstances, we agree with the trial court's conclusion that DENR's denial of the application without inspection evinced a lack of fair and careful consideration and was arbitrary and capricious.

Because the superior court is authorized to reverse an agency decision upon any of the grounds specified in G.S. § 150B-51(b), and we have determined the court in this case was correct in its conclusion that DENR's denial of Reynolds' application was affected by an error of law and was arbitrary and capricious, we need not discuss DENR's remaining arguments with respect to the superior court's order. For the foregoing reasons, we affirm the superior court's reversal of DENR's final agency decision denying Reynolds' 16 April 1998 application for tax certification of the land and equipment associated with its G-7 process for reconstituted sheet tobacco and its order requiring DENR to approve the application.

Affirmed.

Chief Judge EAGLES and Judge BIGGS concur.