NORTH CAROLINA DEPARTMENT OF CORRECTION, PETITIONER-APPELLEE V. CONNIE BRUNSON, RESPONDENT-APPELLANT

No. COA01-793

(Filed 20 August 2002)

**Public Officers and Employees— termination of state employee—contempt of court—personal misconduct**

The trial court did not err by reversing the State Personnel Commission's conclusions that respondent state employee's dismissal for personal misconduct was inappropriate based on the fact that her conduct was not contemptuous and was not unacceptable personal conduct, because: (1) the Department of Corrections's Personnel Manual lists being found in contempt of court as an example of unacceptable conduct, and even though a magistrate later tore up the order of contempt and never filed it with the clerk, a judgment finding respondent in contempt of court was entered when the magistrate told respondent in open court that he was finding her in contempt; (2) the magistrate's suspension of the order after learning there was no place available in the county jail to detain respondent for the entire sentence of forty-eight hours does not negate the final nature of the contempt finding; and (3) respondent's conduct underlying the finding of contempt was unacceptable personal conduct under N.C. Admin. Code tit. 25, r. 1J.0614(b) rather than unsatisfactory job performance under N.C. Admin. Code tit. 25, r. 1J.0604(b).

Appeal by respondent from order entered 10 January 2001 by Judge David Q. LaBarre in Durham County Superior Court. Heard in the Court of Appeals 18 April 2002.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General J. Philip Allen, for petitioner-appellee.*

*Browne, Flebotte, Wilson & Horn, P.L.L.C., by Joy Rhyne Webb, for respondent-appellant.*

MARTIN, Judge.

Respondent Connie Brunson was terminated from her position as an Intensive Case Officer with the Division of Community Corrections of the North Carolina Department of Corrections (Department) effective 30 April 1999, for alleged unacceptable personal conduct. She petitioned for a contested case hearing.

Evidence before the administrative law judge (ALJ) at the contested case hearing consisted of the testimony of several witnesses as well as numerous exhibits, which included written statements by the witnesses as well as other documentary evidence. The evidence tended to show that the incident giving rise to respondent's dismissal occurred in the Durham County Magistrate's Office on 14 January 1999. Respondent was in the magistrate's office, processing one of her probationers for a probation violation. When respondent entered the office, Durham Police Officer K.L. Johnson was seated in front of one of the magistrate's windows on the right hand side. No one was seated in front of the left window, so respondent instructed her probationer to sit on the stool in front of the left window. There were considerable contradictions in the evidence as to what occurred thereafter.

In his testimony at the administrative hearing and in his written statement, Officer Johnson stated that respondent was talking loudly when she entered the magistrate's office. Officer Johnson was waiting to do business with the magistrate when respondent got in front of him in line and placed her papers into the magistrate's window. Officer Johnson advised respondent that he had been waiting and was ahead of her in the line; according to Officer Johnson, respondent said, " 'So, I got it like that, I've been here 15 years and I can do that.' " At that point, Magistrate Robinson and Magistrate VanVleet entered the processing room and Magistrate VanVleet sat down behind the window at which Officer Johnson had been waiting. Respondent began talking loudly to the probationer in her custody about his attire and his haircut; she then turned and began poking Officer Johnson on the left arm. Magistrate VanVleet instructed respondent to be quiet and to stand with her client. Respondent then

stated " 'who does he think he is? . . . he must know who I am.' " While Officer Johnson was providing information to the magistrate, respondent poked his arm again and Officer Johnson advised respondent that if she struck him again, he would charge her with assault on an officer. Magistrate VanVleet told respondent to go to the other side of the room because she was being disruptive. Respondent and the magistrate had words and Magistrate VanVleet told her " 'one more word and you are in contempt of this court.' " According to Officer Johnson, respondent walked to the other side of the room and asked Magistrate Robinson, " 'who is that, he must not know me, he must be new . . . .' " At that point, Magistrate VanVleet told respondent that he was finding her in contempt of court and ordered that she be taken into custody.

In his written statement and in his testimony before the ALJ, Magistrate VanVleet related that as he was beginning his probable cause proceeding with Officer Johnson, respondent and Officer Johnson were talking and he observed respondent poke Officer Johnson's shoulder. Magistrate VanVleet instructed both respondent and the officer that he was beginning the proceeding; Officer Johnson then ceased the conversation and began presenting his case to the magistrate, but respondent continued to speak in a loud and boisterous tone. Magistrate VanVleet stopped the probable cause hearing because he could not hear Officer Johnson. Upon learning that respondent was a probation officer, Magistrate VanVleet told respondent that she was to stand away from his window, and not to come to his window again. Magistrate VanVleet continued the probable cause hearing but had to stop the hearing again when respondent made statements directed toward his window. At that point, Magistrate VanVleet advised respondent that if she did not quiet down, he would hold her in contempt. Magistrate VanVleet resumed the hearing with Officer Johnson but after a few minutes had passed, respondent leaned into his window, partially blocking his view of Officer Johnson. At that point, the magistrate told respondent that she was being held in contempt and ordered that she be taken into custody. The accounts of Officer Johnson and Magistrate VanVleet were corroborated by the testimony of Officer David Diogo, who was also present in the magistrate's office.

Respondent testified that after she entered the Magistrate's office, she and Officer Johnson "began to talk and laugh and joke and tease with one another." Respondent stated that she then did business with Magistrate Stephanie Robinson. According to respondent, she

heard Officer Johnson, jokingly, she thought, state, " 'Why is she being waited on first?' " Respondent then jokingly responded, " 'Because I have seniority. I've been here 15 years.' " Respondent proceeded with her business with Magistrate Robinson but later heard someone yelling out to be quiet and to "step back from the window or you'll be held in contempt of court." Respondent finished conducting her business with Magistrate Robinson and then looked to see who was yelling. At that point, Magistrate VanVleet threw up his hands and said, " 'That's it. You're held in contempt of court.' " According to respondent, she still did not realize that he was talking to her. As she was beginning to leave, Corporal Ray, who was also present in the magistrate's office, informed her that she had been held in contempt of court.

Corporal Ray testified that he observed respondent and Officer Johnson joking with each other. He further testified that he was under the impression that respondent did not realize that Magistrate VanVleet was talking to her or that she did not hear him tell her to step away from the window. Additionally, Corporal Ray thought that respondent had not heard Magistrate VanVleet hold her in contempt of court.

In his written order finding respondent in contempt, a copy of which is in the record, Magistrate VanVleet ordered that she be held in the Durham County jail for 48 hours. Magistrate VanVleet testified that, after conversing with the Chief District Court Judge for Durham County and being advised that there was no place to hold respondent, he "suspended" the contempt order and released respondent after she apologized for her conduct. Respondent testified that Magistrate VanVleet tore up the contempt order in her presence.

On 11 April 2000, the ALJ filed a recommended decision in which he concluded that the Department lacked just cause to dismiss respondent and recommended that she be reinstated with back pay, costs, and attorney's fees. The ALJ concluded that though respondent's conduct was such as to constitute unsatisfactory job performance, it did not rise to the level of unacceptable personal conduct so as to be grounds for termination without prior warning. Accordingly, the ALJ found the Department did not have just cause to terminate respondent, since she had not received the requisite written warnings required for termination for unsatisfactory job performance. On 1 September 2000, the State Personnel Commission (Commission) adopted the ALJ's recommended findings of fact, conclusions of law,

and decision. The Department petitioned for judicial review of the Commission's decision.

In an order entered 10 January 2001, the superior court determined that the Commission's decision was erroneous as a matter of law. The superior court reversed the decision of the Commission and remanded the matter with instructions to the Commission to reinstate and affirm the decision of the Department to dismiss respondent from employment. Respondent appeals.

---

Upon an appeal from an order of the superior court entered after review of an agency decision, " 'the appellate court examines the trial court's order for error of law . . . [by] (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly.' " *ACT-UP Triangle v. Comm'n for Health Services*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997) (citation omitted). The appropriate scope of review of the agency to be utilized by the superior court depends on the issues raised in the petition for judicial review. *Id.*

> When the petitioner contends the agency decision was affected by an error of law, G.S. § 150B-51(b)(1)(2)(3) & (4), *de novo* review is the proper standard; if it is contended the agency decision was not supported by the evidence, G.S. § 150B-51(b)(5), or was arbitrary and capricious, G.S. § 150B-51(b)(6), the whole record test is the proper standard (citation omitted).

*R.J. Reynolds Tobacco Co. v. North Carolina Dept. of Environment & Natural Resources*, 148 N.C. App. 610, 614, 560 S.E.2d 163, 166, *disc. review denied*, 355 N.C. 493, 564 S.E.2d 44 (2002). It may be necessary for the reviewing court to employ both standards of review if warranted by the nature of the issues raised. *In re Appeal by McCrary*, 112 N.C. App. 161, 435 S.E.2d 359 (1993).

In its petition for judicial review in the superior court, the Department alleged that portions of the Commission's decision were either contrary to, or unsupported by, substantial evidence in the record; in addition, the Department alleged the decision was arbitrary and capricious and that the Commission had committed errors of law. Because the petition for judicial review raised issues of whether the agency decision was unsupported by the evidence (G.S. § 150B-51(b)(5)) or was arbitrary and capricious (G.S. § 150B-51(b)(6)), as well as issues of whether the decision was affected by errors of law (G.S. § 150B-51(b)(4)), both *de novo* review

and whole record review were called for. *See McCrary*, 112 N.C. App. 161, 435 S.E.2d 359.

In its order reversing the Commission, the superior court explicitly adopted a *de novo* standard of review in reviewing the agency decision for error of law. The court wrote:

> Since the gravamen of the petition surrounds alleged errors of law committed by the [ALJ] and the State Personnel Commission, both as to their contravening a judicial official's written order and as to their characterization of Respondent's conduct as not being unacceptable personal conduct, the reviewing Court adopted a *de novo* standard of review . . . .

The court went on to recite that it had reviewed "the entire administrative record, including the exhibits and the transcript of the hearing before the [ALJ]," before making extensive findings of fact. Respondent argues the trial court erred in making these findings and in replacing the Commission's findings regarding conflicting evidence with its own.

Respondent correctly argues that a reviewing court, when conducting a "whole record" review, may not substitute its own findings for those of the agency with regard to conflicts in the evidence, even though the trial court may have found differently from the agency. *Savings & Loan Assoc. v. Savings & Loan Comm.*, 43 N.C. App. 493, 259 S.E.2d 373 (1979). However, when the trial court is conducting *de novo* review to determine whether an agency decision was affected by error of law, this Court has recently observed that the trial court is required to " 'consider a question anew, as if not considered or decided by the agency' previously (citation omitted) . . . [and] must make its own findings of fact and conclusions of law and cannot defer to the agency its duty to do so.' " *Jordan v. Civil Serv. Bd. of Charlotte*, 137 N.C. App. 575, 577, 528 S.E.2d 927, 929 (2000). Moreover, when conducting *de novo* review, the reviewing court may substitute its judgment for that of the agency. *Duke University Medical Center v. Bruton*, 134 N.C. App. 39, 42, 516 S.E.2d 633, 635 (1999).

In seeking review of the Commission's decision, the Department asserted the Commission committed an error of law in concluding that respondent's conduct constituted "unsatisfactory job performance" rather than "unacceptable personal conduct." Under the Commission's regulations, a state employee may be terminated from

employment for "just cause." "Just cause" may consist of either "unsatisfactory job performance" or "unacceptable personal conduct." N.C. Admin. Code tit. 25, r. 1J.0604(b) (April 2002). "Unsatisfactory job performance" is defined as

> [w]ork-related performance that fails to satisfactorily meet job requirements as specified in the relevant job description, work plan, or as directed by the management of the work unit or agency.

N.C. Admin. Code tit. 25, r. 1J.0614(j). "Unacceptable personal conduct" is defined, as applicable to the present case, as:

> (1) conduct for which no reasonable person should expect to receive prior warning; or
>
> . . .
>
> (5) conduct unbecoming a state employee that is detrimental to state service[.]

N.C. Admin. Code tit. 25, r. 1J.0614(i). A State employee may be terminated for a single incident of "unacceptable personal conduct" without any prior disciplinary action while certain warnings are required for dismissals based on an employee's "unsatisfactory job performance." N.C. Admin. Code tit. 25, r. 1J.0608(a), r. 1J.0605(b). Regulations promulgated by the Commission have the force and effect of law, and an erroneous interpretation of such regulations by the Commission is an error of law, subject to *de novo* review. *Beauchesne v. Univ. of N.C. at Chapel Hill*, 125 N.C. App. 457, 462, 481 S.E.2d 685, 689 (1997).

In its findings of fact, the Commission found as a fact that respondent Brunson had been found in contempt of court by Magistrate VanVleet, and that after being detained for four hours, she apologized to the magistrate, who tore up the order. From this finding, the Commission concluded as a matter of law that respondent had not intentionally acted contemptuously toward the magistrate and that her actions did not rise to the level of unacceptable personal conduct. Upon review, the superior court determined the Commission's conclusions that respondent's conduct was not contemptuous and was not unacceptable personal conduct to be errors of law. We agree.

The Department's Personnel Manual, in evidence in this case, lists, as an example of unacceptable personal conduct, "[a]s a repre-

sentative of the Department, being found in contempt of court." There is no question that respondent, under the Commission's findings as well as those of the superior court, was found by Magistrate VanVleet to be in contempt of court. Respondent argues, however, that since the magistrate tore up the order of contempt and never filed it with the clerk, there was no final judgment of contempt entered. "Judgment is entered when sentence is pronounced." N.C. Gen. Stat. § 15A-101(4a) (2002). In a criminal case, for entry of judgment to occur, a judge must either announce his ruling in open court or sign the judgment containing the ruling and file it with the clerk. *State v. Boone*, 310 N.C. 284, 311 S.E.2d 552 (1984). In the case *sub judice*, the Commission and the trial court found that the magistrate had told respondent he was finding her in contempt, thereby announcing his ruling, in open court. Thus, a judgment finding respondent Brunson in contempt of court order was entered.

Nonetheless, respondent argues the contempt order was not final since Magistrate VanVleet tore it up upon her apology after she had been detained for approximately four hours. Magistrate VanVleet testified that he "suspended" the order after he had consulted with the Chief District Court Judge and had learned there was no place available in the county jail to detain respondent for the entire sentence of forty-eight hours. Magistrate VanVleet's "suspension" of the sentence does not negate the final nature of the contempt finding. The trial court's characterization of respondent's apology as "purging" herself of contempt, which is not available in criminal contempt matters, *Bishop v. Bishop*, 90 N.C. App. 499, 369 S.E.2d 106 (1988), while erroneous, is inconsequential to the court's correct legal conclusion that Magistrate VanVleet's order finding respondent in contempt was a final order of a judicial official.

Having determined that Magistrate VanVleet's order finding respondent in contempt was a final order of a judicial official, we must also agree with the trial court's legal conclusion that respondent's conduct underlying the finding of contempt was unacceptable personal conduct rather than unsatisfactory job performance, and that the Commission's conclusion to the contrary was an error of law. Being held in contempt of court as a representative of the Department is specifically listed in the North Carolina Department of Correction Personnel Manual as an example of personal misconduct, and is undeniably "conduct for which no reasonable person should expect to receive prior warning," as well as "conduct unbecoming a state employee that is detrimental to state service." N.C. Admin. Code tit.

25, r. 1J.0614(i). Therefore, the Commission's decision reversing the Department's dismissal of respondent for personal misconduct was affected by error of law and the trial court's order reversing such decision will be affirmed.

Because we hold that the Commission's decision reversing the Department's dismissal of respondent from employment for unacceptable personal conduct was affected by error of law and must be reversed, we deem it unnecessary to review respondent's assignments of error relating to the trial court's failure to apply the whole record standard of review to the remaining grounds urged by the Department in its petition for judicial review.

Affirmed.

Judges TYSON and THOMAS concur.